UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES,

      Plaintiff,

      v.                                      Case No. 18-CR-130

PETER ARMBRUSTER
MARK WOGSLAND,
and BRET NAGGS,

      Defendants.

## REPLY IN SUPPORT OF DEFENDANT PETER ARMBRUSTER'S MOTION FOR A BILL OF PARTICULARS

Defendant Peter Armbruster, by and through his undersigned counsel, respectfully submits this reply memorandum of law in further support of his motion for a bill of particulars (Dkt. No. 85).

## PRELIMINARY STATEMENT

The Government's opposition (Dkt. No. 100 ("Opp." or "Opposition")) ignores the most fundamental Constitutional principle of the criminal justice system—that all defendants are presumed innocent until proven guilty by the Government. Instead, the Government relies on the faulty notion that because Defendants are *charged* with orchestrating far-reaching, years-spanning conspiracies and bank fraud at Roadrunner,[1] they committed the alleged wrongdoing and, therefore, necessarily know the specific contours of Counts One, Ten, and Eighteen as charged in the Indictment. Essentially, the Government argues that it has no obligation to inform Defendants

---

[1] All capitalized terms not defined herein shall have the meaning set forth in Defendant Armbruster's moving brief (Dkt. No. 86 ("Br." or "Brief")).

of the nature and scope of the charges against them because Defendants know what they did. This includes, for example, which of the hundreds of Roadrunner employees were co-conspirators, which of the dozens of subsidiaries were affected by the alleged conduct, and which of the thousands of accounting or financial transactions comprise the conspiracy and bank fraud counts.

The Government's assertion is deeply flawed. The Government cannot rely on mere allegations of criminal wrongdoing as substantive evidence of Defendants' knowledge of the acts the Government has charged to be criminal. An indictment *itself* must provide sufficient notice of the charges to protect a defendant's Fifth and Sixth Amendment rights. The Indictment in this case does not satisfy this basic requirement. Counts One, Ten, and Eighteen include expansive language touching virtually all aspects of Roadrunner's business, encompassing years' worth of conduct unidentified in the Indictment, but charged to be criminal, thereby subjecting Defendants to unfair surprise at trial. Defendants request that the Government provide them with notice of the other, unidentified acts that it charges to be criminal conduct.

The Government's Opposition fails to address the Indictment's deficiencies. Instead, the Opposition erroneously tries to portray Defendants' request as one for additional information regarding the acts already detailed in the Indictment. This is not at all what Defendants are seeking. And the Government's false equivalence renders its Opposition unresponsive to Defendants' requests.

The Government's reliance on the "well-organized" nature of its voluminous production to date is also misplaced. This argument ignores the fundamental error with the Indictment, and assumes the Constitutional sufficiency of the notice provided therein. Regardless of its formatting, discovery can only aid Defendants if they are on notice of what conduct the Government is alleging to be criminal. The produced materials themselves are not an appropriate proxy for, and in any

case, do not provide, the notice the Indictment itself must provide. Without adequate notice of what conduct the Government is alleging to be criminal, Defendants are unable to prepare for trial, as they lack any narrowing lens through which to review the millions of pages of material to delineate what is alleged by the Government to be criminal conduct.

And while the "key materials" identified by the Government do provide a smaller tranche of materials to review, the Government conveniently omits that these documents themselves reference scores of topics, subsidiaries, and actors and do not render the remaining 99.66% of documents irrelevant. The effect of the expansive language of Counts One, Ten, and Eighteen, combined with the .34% of discovery specifically identified by the Government, is that *any* of the topics referenced in the entirety of the Government's productions could be a part of the charged conduct.

Accordingly, Defendants respectfully request that the Court order the Government to provide a bill of particulars as to Counts One, Ten, and Eighteen, answering the questions detailed in Exhibit A to their Brief, which would give Defendants the Constitutionally-required notice of the charges against them.

## ADDITIONAL RELEVANT FACTUAL BACKGROUND

### I. The Government's "Well-Organized" Discovery Does Not Inform Defendants Of The Universe Of Conduct Charged

The Government relies heavily on its "well-organized" discovery as a cure for the Indictment's deficiency. Even assuming *arguendo* such a deficiency could be cured by discovery, which it cannot, the Government's identification of "key material" in no way facilitates Defendants' review of the voluminous production such that they can adequately prepare for trial.

As an initial matter, any suggestion that Defendants may forego review of the remaining 99.66% of documents produced is absurd—counsel for Defendants cannot discharge their duties

to Defendants by ignoring the vast majority of the discovery simply because the Government has identified "key materials."

Moreover, while the Government is self-congratulatory that it identified .34% of the discovery as "key material" in aid of Defendants' review of relevant documents and issues, it conveniently omits that the contents of the 93 interview reports and grand jury transcripts with accompanying exhibits, the 207 key documents relating to specific counts and allegations in the Indictment, the 1,676 "notable" documents identified by the Government as of particular relevance to the investigation, and the 6,156 relevant documents identified by Roadrunner's counsel, in no way sharpen the focus of the charged conduct, and do not aid Defendants in fully understanding the nature of the charges against them. In fact, compared with the conduct alleged with specificity in the Indictment, the topics covered in these "key materials" remain wide-ranging and more expansive than those specifically identified in the Indictment.

First, in the 93 interview reports and transcripts provided, dozens of topics are covered. While some of the topics seem to inform the charged conduct articulated in the Indictment, others appear to be nothing more than investigative dead-ends. Defendants cannot be certain, however, that what might appear to be an investigative dead-end is not, according to the Government, conduct within the scope of the broadly drafted paragraphs of Counts One, Ten, or Eighteen.

Second, the Government contends that the Indictment makes "clear" that the co-conspirators "include other Roadrunner employees." Opp., 20. But Roadrunner employed thousands of people at its dozens of subsidiaries during the alleged offense period, any number of whom apparently qualify as potential co-conspirators. And even assuming the Government interviewed all of the as-yet-unidentified co-conspirators, thus narrowing the potential conspirators down from the thousands of Roadrunner employees, of the 55 people interviewed, at

4

least 35 of them are former or current Roadrunner employees. Moreover, even the Government's attempt to limit the universe of co-conspirators includes expansive language like that used in the Indictment. *Id.* By using the expansive "include," the Government does not foreclose the possibility that non-Roadrunner employee co-conspirators exist. Accordingly, contrary to the Government's representations (*id.*), a "boundless" universe of hundreds of potential co-conspirators still exists.

Third, though the Government touts that it identified for Defendants over 6,000 documents identified as relevant by Roadrunner's counsel, there is no explanation of what these documents are relevant *to*, including whether and if they are relevant to the conduct actually charged by the Indictment. Similarly, there is no indication that the scope of the interviews conducted by Roadrunner's counsel (as memorialized in the interview downloads produced by the Government) is limited to the charged conduct. A review of these documents demonstrates that they encompass a far wider range of topics, subsidiaries, and accounting decisions, than those specifically identified in the Indictment.

Indeed, the Government admits that these documents and interviews are not specifically limited to the charged conduct. Opp., 3–4 (admitting that the documents are related to Roadrunner's restatement of financial results and internal investigation, while others are relevant to "other areas relevant to the government's investigation."). Setting aside whether the Government inappropriately used Roadrunner's counsel to conduct its investigation (*see* Dkt. No. 87), the issue remains that this identification of "key materials" in no way segregates materials or issues relevant to conduct investigated but which ultimately was not charged from the conduct actually charged by the Government. Moreover, given that these documents were identified as

5

Case 2:18-cr-00130-LA-NJ   Filed 12/18/19   Page 5 of 15   Document 108

relevant by Roadrunner's counsel, rather than the Government, the designation of such documents has little value to Defendants in discerning what the Government charged as criminal conduct.[2]

Fourth, a review of the grand jury testimony is similarly not helpful. As noted in Wogsland's memorandum of law in support of his motion to dismiss, the Government produced transcripts of witnesses who testified before a grand jury convened in the District of Columbia. Dkt. No. 87, at 11–12. But the grand jury that returned the Indictment was convened by the Government in *this* District, and there is no indication in any of the documents produced by the Government what testimony or evidence was presented before that grand jury, such that it would provide clarity as to the specific conduct charged by the Indictment.

Finally, the Government identified in its Opposition as relevant records from Roadrunner's outside auditor, Deloitte & Touche ("Deloitte"), including files relating to Roadrunner's restatement (the "2018 Restatement"). Opp., 5. But again, this in way no limits or provides any further detail as to the scope of the charged conduct. Although the 2018 Restatement is referenced in the Indictment (Dkt. No. 48 ("Ind."), ¶ 74), its contents, and Deloitte's respective workpapers, cover both charged and potentially un-charged conduct. While the 2018 Restatement disclosed and Deloitte's workpapers detailed accounting errors in Roadrunner's financial statements, they in no way can substitute for the Government providing the Constitutionally-required notice of what specific conduct it ultimately charged as fraud and conspiracies to commit fraud in the Indictment. The judgments of Roadrunner's private-sector counsel, and that of Deloitte, a private auditing firm,

---

[2] Unless, of course, the Government concedes that it outsourced its investigation to Roadrunner's counsel such that its identification of relevant materials can be substituted for the Government's judgment. The Government cannot have it both ways. It cannot simultaneously argue that it did not outsource its investigation to Roadrunner's counsel, and also that the work product of Roadrunner's counsel identifies key materials relevant to the criminal conduct charged by the Indictment.

cannot be substituted for—and indeed, as the Government has argued (Dkt. No. 102), are not—the prosecutorial discretion of the United States government as to what conduct is *criminal*.

## ARGUMENT

### I. Defendants Are Presumed Innocent; The Government Bears The Burden Of Disclosing And Delineating Criminal Conduct From Non-Criminal Conduct

A core purpose of a bill of particulars is to protect a defendant's Constitutional rights under the Fifth and Sixth Amendments and it serves as a tool to "inform[] a defendant when he lacks the 'central facts which enable him to conduct his own investigation of the transactions giving rise to the charge.'" *U.S. v. Carman*, No. 02 CR 464-1, 8, 2004 U.S. Dist. LEXIS 14589, at *7 (N.D. Ill. July 26, 2004) (quoting *U.S. v. Manetti*, 323 F. Supp. 683, 696 (D. Del. Feb. 8, 1971)). That these and the other standards cited in both the Moving Brief and the Opposition are "familiar does not mean they are easy to apply in individual cases." *U.S. v. Rajaratnam*, No. 09 Cr. 1184 (RJH), 2010 U.S. Dist. LEXIS 70385, at *3 (S.D.N.Y. July 13, 2010). This is especially true in "complex conspiracy cases like this one, [where] the potential for unfair surprise and the difficulty of preparing a defense are amplified." *Id*. at *4.

Even so, in an attempt to shirk its responsibilities, the Government argues that any lack of clarity in the Indictment can be resolved by Defendants themselves, as

> [F]ormer finance executives…who are intimately familiar with the accounting and finance issues relevant to this case and even the particular misstated accounts at issue. The defendants authored and reviewed many of the documents at issue in this case and cannot claim to be unfamiliar with or confused by the terminology in the Superseding Indictment.

Opp., 17. This faulty assumption runs counter to the cornerstone of this country's criminal justice system, however, as it is the Government's burden to issue an indictment that provides sufficient notice of the charges to allow Defendants to prepare for trial. *See U.S. v. McGee*, No. 08-CR-17, 2008 U.S. Dist. LEXIS 16008, at *19–20 (E.D. Wis. Mar. 3, 2008) ("At a minimum, the indictment

7

Case 2:18-cr-00130-LA-NJ   Filed 12/18/19   Page 7 of 15   Document 108

cannot be substituted for—and indeed, as the Government has argued (Dkt. No. 102), are not—the prosecutorial discretion of the United States government as to what conduct is *criminal*.

## ARGUMENT

### I. Defendants Are Presumed Innocent; The Government Bears The Burden Of Disclosing And Delineating Criminal Conduct From Non-Criminal Conduct

A core purpose of a bill of particulars is to protect a defendant's Constitutional rights under the Fifth and Sixth Amendments and it serves as a tool to "inform[] a defendant when he lacks the 'central facts which enable him to conduct his own investigation of the transactions giving rise to the charge.'" *U.S. v. Carman*, No. 02 CR 464-1, 8, 2004 U.S. Dist. LEXIS 14589, at *7 (N.D. Ill. July 26, 2004) (quoting *U.S. v. Manetti*, 323 F. Supp. 683, 696 (D. Del. Feb. 8, 1971)). That these and the other standards cited in both the Moving Brief and the Opposition are "familiar does not mean they are easy to apply in individual cases." *U.S. v. Rajaratnam*, No. 09 Cr. 1184 (RJH), 2010 U.S. Dist. LEXIS 70385, at *3 (S.D.N.Y. July 13, 2010). This is especially true in "complex conspiracy cases like this one, [where] the potential for unfair surprise and the difficulty of preparing a defense are amplified." *Id*. at *4.

Even so, in an attempt to shirk its responsibilities, the Government argues that any lack of clarity in the Indictment can be resolved by Defendants themselves, as

> [F]ormer finance executives…who are intimately familiar with the accounting and finance issues relevant to this case and even the particular misstated accounts at issue. The defendants authored and reviewed many of the documents at issue in this case and cannot claim to be unfamiliar with or confused by the terminology in the Superseding Indictment.

Opp., 17. This faulty assumption runs counter to the cornerstone of this country's criminal justice system, however, as it is the Government's burden to issue an indictment that provides sufficient notice of the charges to allow Defendants to prepare for trial. *See U.S. v. McGee*, No. 08-CR-17, 2008 U.S. Dist. LEXIS 16008, at *19–20 (E.D. Wis. Mar. 3, 2008) ("At a minimum, the indictment

7

Case 2:18-cr-00130-LA-NJ   Filed 12/18/19   Page 7 of 15   Document 108

must state all elements of the offense, provide sufficient notice to the defendant to permit her to prepare an adequate defense and be sufficiently specific to make a defendant aware of any double jeopardy problems."). Indeed, "it would be improper to deny a [motion for a bill of] particular[s] because of a belief that the defendants know what they did. That view would presume that the defendants are guilty, rather than invoking the proper presumption of innocence." *U.S. v. Tanner*, 279 F. Supp. 457, 474 n.13 (N.D. Ill. 1967).

## II. Defendants Appropriately Seek The Specific Notice Lacking In The Indictment

The Opposition twists Defendants' motion as one requesting proof of the Government's case (Opp., 8–10, 12–14) *i.e.*, seeking additional information regarding the conduct specifically charged. However, a review of the requests makes clear that Defendants seek only the scope of the nature of the charges against them, *i.e.*, information as to what *additional conduct* the Government charges to be criminal. This fundamental difference explains why courts in the cases cited by the Government rejected those defendants' requests for a bill of particulars, and why this Court should grant this request.

As to Count One, the Government contends the Indictment provides substantial detail as to how Defendants achieved the object of the alleged conspiracy and so no further details are necessary. Opp., 15. Defendants are not seeking additional detail or evidence of the Government's proof as to those acts described in Count One. Rather, Defendants are requesting particulars in response to only a very narrow aspect of Count One—the reference to the existence of acts *beyond* those described in "substantial detail" in Count One. *Id.* That certain acts are detailed in Count One does not provide Defendants with adequate (or any) notice of any other acts the Government charged as acts committed in furtherance of the conspiracy. Accordingly, Defendants are properly requesting clarification as to Count One's inclusion of *other* acts allegedly committed in

furtherance of the conspiracy beyond those specifically referenced in the Indictment. *See* Br., Ex. A.

Counts Ten and Eighteen are similarly deficient. Though the Government suggests that the Indictment again contains a "detailed description" of the schemes (Opp., 16), Counts Ten and Eighteen incorporate by reference several instances of unspecific language, including "for example," which expand the scope of the Indictment allegations beyond what is in fact articulated in the Indictment. Br., 4. Moreover, the Government's assertion that courts view indictment references to "examples" or "types" of misrepresentations as sufficient to put a defendant on notice of the charges against him (Opp., 16) is not supported by the three cases cited in the Opposition.

First, the underlying indictment in *U.S. v. Holzendorf*, 576 Fed. App'x 932 (11th Cir. 2014), does not contain the "for example" language at issue in Counts Ten and Eighteen. Putting aside this central difference, *Holzendorf* is distinguishable in other ways, too. In *Holzendorf*, the defendant was charged with a mortgage fraud scheme in which he and the buyers falsely inflated each home's purchase price to include improvements that would never occur, ultimately pocketing the payment received from lenders to cover the false improvement cost. *Id*. at 934. The defendant moved for a bill of particulars "detailing every single material misrepresentation the government intended to show at trial," which the court denied as inappropriately seeking "detailed disclosure of the evidence that [the government] planned to present at trial." *Id*. at 935–36. The court also noted that the information defendant "sought was already available from other sources," namely "coconspirators' trial transcripts and plea agreements." *Id*. Defendants' requests are different in kind from those at issue in *Holzendorf*. Here, Defendants seek for the Government to disclose the

9

details of *additional* acts that it has charged to be criminal. Further, unlike *Holzendorf*, Defendants do not have any other potential sources of the requested information.[3]

The underlying indictment in *U.S. v. Batiste*, No. 06-20373-CR, 2007 WL 9653090 (S.D. Fla. Sept. 6, 2007), also did not make any reference to "examples." *Batiste* involved charges that defendants conspired to use explosives to destroy the Sears Tower and a number of FBI offices in major metropolitan areas. *Id*. at *1. Notably, the defendants sought further information about these *specified* allegations of criminal conduct. The defendants were not, as here, seeking notice of whether the expansive indictment language in the indictment included other, *additional* conduct alleged to be criminal. *Id*. at *2.

The only case cited by the Government that actually includes language like "for example" in the underlying indictment, *U.S. v. Wey*, No. 15-cr-611, 2017 U.S. Dist. LEXIS 6991, *57–58 (S.D.N.Y. Jan. 18, 2017), involved requests for particulars that explicitly sought evidentiary minutiae such as "precisely '*how*' the Government alleges that Wey '*caused*' certain actions to be taken." *Id*. at *58 (emphasis in original). Further, "[t]o the extent that the Indictment [wa]s short on specifics, many of those [we]re filled in by the lengthy Search Warrant Affidavit," along with the other voluminous discovery, which set forth substantial additional detail about the alleged scheme. *Id*. at *64. As in *Holzendorf*, the *Wey* defendants thus made especially exacting requests and had access to discovery materials that clarified the acts the already-specific indictment charged to be criminal. Here, Defendants have no such other materials, and Defendants' requests do not seek evidentiary details of the Government's case but rather the scope and nature of the conduct

---

[3] For the reasons described *infra*, discovery is no answer in this case, either. Defendants are unable to ascertain from that discovery the illegal activities of which they are accused of having engaged.

the Government charges to be criminal. As such, the cases cited by the Government are inapplicable.

**III. Discovery Does Not Cure The Lack Of Specific Notice**

The Government relies on its voluminous and "well-organized" discovery as a solution to cure any lack of specificity in the Indictment. But the discovery does not and cannot cure the lack of specificity where Counts One, Ten, and Eighteen do not provide a filter through which Defendants can direct their preparation efforts.

The Government argues that its identification of the "key materials" alerts Defendants of the nature of the charges against them. Opp., 3, 11. This argument fails, however, because the contents of the "key materials" are incredibly expansive, and include additional topics and issues identified by non-governmental parties, but not specifically identified in the Indictment. *Supra*, 3–7. Accordingly, a review of the "key materials" in no way alerts Defendants of all the acts the Government charges to be criminal, and provides no meaningful way for Defendants to sort through the Government's voluminous production. Defendants remain subject to "searching for the proverbial 'needle in a haystack' when analyzing the charges against" them and preparing their defense. *U.S. v. Ning Wen*, No. 04-CR-241, 2005 U.S. Dist. LEXIS 19531, *23 (E.D. Wis. Aug. 17, 2005).[4]

---

[4] Moreover, because the Indictment does not specify the identities of the uncharged co-conspirators in this case, Defendants have no other way of identifying the scope of the alleged conspiracies. The Government argues that courts "routinely reject[] sweeping requests in conspiracy cases for the government to identify all co-conspirators," (Opp., 19), but proceeds to cite factually inapposite cases. For example, in *U.S. v. Glecier*, 923 F.2d 496 (7th Cir. 1991), the defendants had some alternative means by which to identify the co-conspirators. There, the government had given "notice to any interested defendant of the names of all co-conspirators not identified in the indictment, as well as the names of cooperating co-conspirators it intended to call at trial, one of whom was made available to Glecier's counsel for pre-trial interview." *Id*. at 502. The government also provided a *Santiago* proffer. *Id.* In *U.S. v. Caputo*, 288 F. Supp. 2d 923 (N.D. Ill. 2003), the court denied a bill of particulars requesting, among other things, the identities of all

11

Case 2:18-cr-00130-LA-NJ   Filed 12/18/19   Page 11 of 15   Document 108

In support of its argument, the Government asserts that "courts routinely reject claims for a bill of particulars where a detailed indictment and/or discovery provide the defendant with sufficient notice of the charges," relying on *U.S. v. Lundstrom*, 880 F.3d 423 (8th Cir. 2018). Opp., 13. The thrust of *Lundstrom*'s three-paragraph bill of particulars analysis is specific to the government's discovery—provided in a searchable, organized way—and the magistrate judge's earlier ruling that "the government [had] explained its theory of the case." *Id*. at 440. *Lundstrom* does not discuss or analyze the issue before the Court today, which is whether the Indictment allegations themselves put Defendants on notice of the alleged criminal conduct, so as to allow Defendants to utilize the discovery in this case in a meaningful way.

For this reason, the decision in *U.S. v. Bin Laden*, 92 F. Supp. 2d 225 (S.D.N.Y. 2000) is more instructive. Although *Bin Laden* involves significant factual differences, the court also faced the challenging interplay of the availability of voluminous discovery on the one hand, and its practical utility under the circumstances on the other. Ultimately, the court concluded that despite the substantial, detailed discovery produced, "a bill of particulars [wa]s necessary…to permit the [d]efendants to prepare a defense and prevent prejudicial surprise at trial." *Id*. at 235. The court explained that "several of the allegations contained in the 'Overt Acts' section of the Indictment [we]re cast in terms that [we]re too general, in the context of this particular case, to permit the [d]efendants to conduct a *meaningfully directed* investigation of the relevant facts and circumstances and be prepared to respond to the charges." *Id*. (emphasis added). Because the

---

co-conspirators because the "indictment provide[d] a detailed summary of Defendants' conduct" such that the co-conspirators' identities were not necessary to understand the conspiracy's scope. *Id*. at 925. The identities of the co-conspirators would, without question, help Defendants understand the scope of the conspiracies. Further, and although the Government does not address Defendants' request to this effect in its Opposition, the identification of the relevant operating companies would help Defendants' understand the scope of the charged conduct, too.

charges in the indictment were described with broad terms, "those allegations provide[d] too little information to the [d]efendants and their counsel to permit them reasonably to focus their trial preparations, especially in light of the voluminous amount of material that ha[d] been produced in discovery to date." *Id*. at 236.

The court also rejected the government's argument that it should not be required to respond to the defendants' request for particulars "because it ha[d] included a list of 144 overt acts in the Indictment." *Id*. at 237. The court held that even if the government were to limit its proof to the overt acts explicitly alleged in the indictment, "many of those allegations [we]re charged in such general terms that the [d]efendants' trial preparation might nevertheless be unduly burdened, creating a risk of prejudicial surprise at trial." *Id*. Without particulars, the defendants would be left to conduct "seemingly unlimited research and investigation… in an attempt to answer those charges." *Id*.

Defendants are left with the same challenge the court found unacceptable in *Bin Laden*. As alleged, Counts One, Ten, and Eighteen will require unduly burdensome and exhaustive research and investigation in an attempt to discover the charges the Indictment itself should make plain. Despite the Government's focus on its discovery, it "is no solution to rely solely on the quantity of information disclosed by the government" where "the large volume of material disclosed is precisely what necessitates a bill of particulars." *Id*. at 234.

This is especially true for Count Eighteen. Although the Government devotes less than a page to it, Count Eighteen is particularly sweeping—charging criminal liability for the entirety of the four-year offense period based, apparently, on "all of the certifications [Armbruster] regularly signed at the end of each quarter." Opp., 18. But in 2013, for example, the only conduct identified in the Indictment relates to the earn-outs, which is not alleged to begin until July 2013. Ind. ¶ 53.

There is nothing alleged in the Indictment relating to the first two quarters in 2013, yet Count Eighteen nevertheless charges Armbruster in connection with this unidentified conduct. Similarly, the certifications signed at the end of each quarter would have concerned the financials of all of the Roadrunner operating companies, but the Indictment does not provide any specificity as to which operating companies are implicated in Count Eighteen. Count Eighteen also necessarily covers *any* conduct or subject matter raised within the "key materials" (let alone within the broader discovery produced) that *could* fit within the general language in paragraphs 26, 28, 31, 33, 57, 60, or 63, which are re-alleged and incorporated as a "description of the scheme and artifice" to commit bank fraud. Ind. ¶¶ 105–108 (Count Eighteen).

In sum, this case is particularly complex. The Indictment centers on the accounting and financial operations of a trucking logistics company, which grew to become a $2 billion company through rapid acquisitions of smaller trucking companies. As part of its day-to-day business, Roadrunner and its employees necessarily engaged in hundreds of thousands of accounting communications and decisions, involving countless employees and others, any of whom may, apparently, be co-conspirators. *See supra*, 4–5. Therein lies the ultimate impossibility for Defendants—in light of the complexity of the charges and the thousands of accounting and financial transactions that occurred in the more than four-year offense period, without further specificity in the Indictment, any of these transactions, including acts involving unidentified co-conspirators, could fall within the broadly drafted scope of Counts One, Ten, or Eighteen. These concerns are at the heart of Defendants' request for particulars for Counts One, Ten, and Eighteen.

## CONCLUSION

For all of the aforementioned reasons, and for the reasons stated in Armbruster's Memorandum in Support of their Motion for a Bill of Particulars, Armbruster respectfully requests

that the Court order the Government to provide a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f) relating to Counts One, Ten, and Eighteen of the Indictment, and for such other and further relief as proper.

Dated: December 18, 2019          LOEB & LOEB LLP

By: *s/ Andrew R. DeVooght*
    Andrew R. DeVooght
    321 North Clark Street, Suite 2300
    Chicago, Illinois 60654
    adevooght@loeb.com
    Tel: 312-464-3100
    Fax: 312-464-3111

    C. Linna Chen
    345 Park Avenue
    New York, New York 10154
    lchen@loeb.com
    Tel: 212-407-4000
    Fax: 212-407-4990

*Attorneys for Defendant Peter Armbruster*