IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>BRET NAGGS, MARK WOGSLAND, and PETER ARMBRUSTER,<br><br>  Defendants. | Case No. 18-CR-130 |

## DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S DECISION AND ORDER ON NON-PARTIES' JOINT MOTION TO QUASH SUBPOENAS

Ryan S. Hedges
Junaid A. Zubairi
Jonathon P. Reinisch
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
T: +1 312 609 7500
rhedges@vedderprice.com
jzubairi@vedderprice.com
jreinisch@vedderprice.com

*Attorneys for Defendant Mark Wogsland*

Dated: September 14, 2020

## TABLE OF CONTENTS

|      |                                                                                                                                                              | Page |
|------|--------------------------------------------------------------------------------------------------------------------------------------------------------------|-----:|
| I.   | INTRODUCTION                                                                                                                                                 | 1    |
| II.  | BACKGROUND                                                                                                                                                   | 3    |
| III. | ARGUMENT                                                                                                                                                     | 7    |
|      | A. The Subpoenas are not overly broad and seek only limited documents and information exchanged between the Law Firms and the government or the Defendants | 7    |
|      | B. The subpoenaed information is highly relevant and material to the defense                                                                                 | 11   |
|      | C. Greenberg Traurig should be Ordered to turn over Wogsland's client file                                                                                   | 13   |
| IV.  | CONCLUSION                                                                                                                                                   | 14   |

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Kent, et al. v. Stoelting, et al.*,
    Case No. 17-CV-893 ........................................................................................................5

*U.S. v. Bastanipour*,
    697 F.2d 170 (7th Cir. 1982) ............................................................................................7

*U.S. v. Jungen*,
    2014 WL 4924654 (E.D. Wis. Sept. 30, 2014) ..........................................................10, 11

*U.S. v. Nixon*,
    418 U.S. 683 (1974) .........................................................................................................7

*U.S. v. Smith*,
    2020 WL 4934990 (N.D. Ill. Aug. 23, 2020) ...................................................................7

*U.S. v. Soliman*,
    2009 U.S. Dist. LEXIS 45194 (W.D.N.Y. 2009) ..........................................................13

*U.S. v. Wingers*,
    2008 U.S. Dist. LEXIS 35951 (E.D. Wisc. Apr. 10, 2008) ...........................................10

**Statutes**

28 U.S.C. § 636(b) ...................................................................................................................1

**Other Authorities**

FED. R. CRIM. P. 17 ......................................................................................................... *passim*

FED. R. CRIM. P. 59 ..............................................................................................................1, 7

Local Rule 72(c) ......................................................................................................................1

Defendant Mark Wogsland, by his undersigned counsel, submits the following Objections to Magistrate Judge's Decision and Order on Non-Parties' Greenberg Traurig, LLP ("Greenberg Traurig") and Wilmer Culter Pickering Hale & Dorr, LLP's ("WilmerHale") Joint Motion to Quash Subpoenas, pursuant to 28 U.S.C. § 636(b), General Local Rule 72(c), and Federal Rule of Criminal Procedure 59(b). Defendants Bret Naggs and Peter Armbruster fully adopt and join the arguments herein.

## I. INTRODUCTION

These objections concern Rule 17 Subpoenas to Greenberg Traurig and WilmerHale (collectively, the "Law Firms") seeking documents and information related to their investigations for the Defendants' former employer, Roadrunner Transportation Services, Inc., that were provided to the government or Defendants. The Magistrate Judge's Decision and Order (ECF 167 (the "Order")) granted the Law Firms' Motion to Quash in its entirety because it found that the subpoenas were facially overbroad. That erroneous ruling misapprehends the plain language of the requests and failed to consider the realistically quite narrow universe of responsive information that was shared between adversarial parties during the investigation. The Magistrate Judge also inappropriately rewarded the Law Firms for refusing to comply with their Rule 17 obligations based on their assertion that the government is the best source of certain responsive information, while at the same time depriving Defendants of the requested discovery from the government. (*See* ECF 166 (recommending denial of Defendants' motion to compel).) Taken together, the Magistrate Judge's two orders leave Defendants with no recourse to obtain this critical evidence, despite the fact that both the government and the Law Firms each suggest that the evidence is in the possession of the other (and neither contending that it does not possess the requested evidence). (*Compare* ECF 103 at 11 (the government asserting that it "has been telling the defendants for months" that "Roadrunner's counsel . . . remain the best source for . . . providing any documents");

*with* ECF 127 at 9 (Roadrunner's counsel arguing that they "should not be subjected to discovery demands that can be satisfied completely by demands to a party in the case, here the Government").)

As explained further herein and in the briefing on Defendants' Motion to Dismiss, Defendants have established that the Law Firms, working to stave off a ruinous indictment of Roadrunner, were in regular contact with the government to discuss the parameters, scope, methodology and findings of the Law Firms' investigations, and frequently provided the government with updates and results, in real time. However, Defendants have been told by the government that the Law Firms did not provide the government any written documents containing the material information that was clearly conveyed during those meetings and phone calls. (ECF 91-4.) For example, when the Law Firms presented the government with facts and analysis gleaned from the investigations, perhaps in the form of a PowerPoint presentation, the evidence shows that the Law Firms did not leave the government a copy of the presentation materials. While Defendants are accordingly seeking from the government its notes of the information provided by the Law Firms during those meetings, Defendants are also entitled under Rule 17 to obtain the underlying presentation materials directly from the source—the Law Firms.

Compliance with the Subpoenas will not be burdensome because the Subpoenas are narrowly tailored to encompass documents from a short period of time and a small universe of potential custodians. The subject investigations spanned only from January 2017 through about September 2017 (Greenberg Traurig) and from April 2017 through about early 2019 (WilmerHale). Based on the evidence obtained to date, Defendants understand that each Law Firm had approximately between 6 and 10 attorneys involved in the investigations that interfaced with the government. (*See* ECF 113-2, 113-3.) For its part, the government had approximately nine

2

attorneys at various times present at the meetings or on the phone calls with the Law Firms. (*Id.*) Thus, it would require relatively little effort for these megafirms to gather and review the potentially responsive materials from a handful of lawyers during a span of approximately nine months for Greenberg Traurig, and approximately two years for WilmerHale. Nevertheless, the Law Firms, at Roadrunner's direction, have refused to produce documents responsive to the Subpoenas and moved to quash them entirely. (ECF 127, 132, 134.)

The Order excused the Law Firms from any disclosure obligations based on a cursory and undeveloped belief that a perceived superficial similarity between the Subpoenas and "civil discovery requests" renders the Subpoenas unenforceable. (*Id.* at 5-6.) That finding is clearly erroneous. The Order does not consider or even contain any reference to the unique factual background of this case, including Defendants' good faith negotiations with the Law Firms to narrow the Subpoenas, nor to any actual "burden" that compliance would impose on the Law Firms. Defendants respectfully request that the Court reject the Order and enforce the subpoenas against the Law Firms so that Defendants may obtain the critical evidence necessary to their defense that has, so far, been unjustifiably withheld.

## II. BACKGROUND

The factual and evidentiary background relevant to these objections is comprehensively set forth in Defendants' briefs and exhibits in opposition to the Motion to Quash and in support of Defendants' Motion to Dismiss. (ECF 87, 91, 112, 132.) To avoid further redundancy, Wogsland incorporates that background as though set forth fully herein and will limit this background section to the facts most relevant to the Order's narrow scope.

In August 2019, Defendants began their efforts to obtain discovery from the government related to witness interviews and other information provided to the government by Roadrunner's outside counsel. (ECF 91-1.) Over the months that followed, the government consistently refused

to comply with Defendants' discovery requests and instead directed Defendants to seek the requested material directly from Greenberg Traurig and WilmerHale. (*See* ECF 91-2 (the government "respectfully suggest[ed] those requests would be more appropriately directed to the parties who actually possess the information," i.e., Roadrunner's outside counsel); *see also* ECF 91-3, 91-4.) Accordingly, Defendants pursued the necessary discovery from Greenberg Traurig, WilmerHale, and Faeger Drinker Biddle & Reath LLP ("Faegre Drinker")[1], on a parallel track to Defendants' continued efforts to obtain the documents from the government.[2]

On September 30, 2019, Defendants issued their first Rule 17 subpoenas for documents to the Law Firms seeking information that the Law Firms had provided to the government and communications between the Law Firms and the government related to Roadrunner's internal investigation, among other things. (ECF 132-1.) At the heart of those document requests were documents and information shared between the Law Firms and the government during each firm's investigatory stint. Defendants then reached an agreement for the Law Firms to voluntarily produce some of the subpoenaed information in exchange for withdrawal of the subpoenas, which resulted in the production of "fact summaries" of the Law Firm's witness interviews that had been orally downloaded to the government, and high-level topical summaries of select oral communications between the government and the Law Firms. (*See*, *e.g.*, ECF 113 at 3-5; ECF 113-2; 113-3.) Following another approximately six weeks of efforts by Defendants to obtain follow-up information, Greenberg Traurig supplemented its disclosures with summaries of additional oral communications with the government. (ECF 132-4.) Notably for purposes of these Objections,

---

[1] Drinker Biddle & Reath, which recently merged with another law firm to form Faegre Drinker, replaced Greenberg Traurig as counsel for Roadrunner in about October 2017.

[2] The government's refusal to comply with Defendants' discovery requests is the subject of a currently pending Motion to Compel. (ECF 91, 103 113.)

4

none of the Law Firms produced the underlying documents (such as emails, notes of phone conversations, etc.) substantiating their communications with the government.

Defendants continued their attempts to cooperatively and informally obtain critical follow-up evidence from the Law Firms through January 2020. Through the summary information that the Law Firms voluntarily produced, it became apparent that compliance with the subpoenas would impose little or no burden on the Law Firms. There are approximately six Greenberg Traurig attorneys and ten WilmerHale attorneys that interfaced with the government (and thus who are potential custodians) regarding work that was concluded in less than nine months for Greenberg Traurig, and approximately two years for WilmerHale. (ECF 113-2, 113-3.) Indeed, demonstrating the ease with they could comply with the Subpoenas, the Law Firms at one point represented that they already had gathered at least some of the responsive documents for production, but that Roadrunner would not approve the production. (*See*, *e.g.*, ECF 132-4.) Defendants were thus left with no option but to advise the Law Firms that they would need to serve new, narrowed Rule 17 subpoenas to require the production. However, the prospect of a reissued subpoena only caused the Law Firms to withdraw from discussions with Defendants and steadfastly refuse to produce any additional documents or information. At the same time, Roadrunner unilaterally terminated its agreement to advance defense fees and costs in this matter to Wogsland and Naggs and demanded a claw back of all previously advanced fees.[3] (ECF 132-8; 132-9.)

---

[3] Roadrunner's decision to terminate funding to its former employees more than two years after they were indicted is directly contrary to the position it took and acknowledged to this Court in support of Roadrunner's request for approval of the settlement in a related shareholder lawsuit. *See Kent, et al. v. Stoelting, et al.*, Case No. 17-CV-893 (E.D. Wisc.) (ECF No. 75 at p. 13-14); *see also id.* (ECF No. 74 at 3-4 ("it is true that Roadrunner will have to indemnify the three former employees for their defense of the federal criminal action…"); ECF No. 80 at p. 4-5.) Roadrunner's unilateral termination is also contrary to statements that it made to the investing public on June 17, 2020, that Roadrunner has "an obligation to indemnify the former employees and directors" in this matter and that "[a]ny costs will be our responsibility as we have exhausted all of our insurance

Defendants nevertheless served revised, narrowed Rule 17 subpoenas on the Law Firms on February 20, 2020, which sought four circumscribed categories of documents and information:

1. All communications between You and any representative of the Government related to the Subject Matter.

2. All documents and communications, whether created by You or obtained from any other source, including but not limited to notes, memoranda, summaries, read outs, presentation materials, transcripts, audio or video recordings, e-mails and calendar entries, that refer, reflect or relate to any oral or written provision of information to the Government in connection with the Subject Matter.

3. All documents and communications, whether created by You or obtained from any other source, relating to the individual representation of Mark Wogsland, or Peter Armbruster, or Bret Naggs in connection with the Subject Matter, including but not limited to engagement letters, conflict of interest disclosures, conflict of interest waivers, notes, summaries, memoranda, interview transcripts, audio or video recordings, subpoenas, e-mails, calendar entries and communications with any representative of the Government.

4. All communications between You, on the one hand, and Mark Wogsland, or Peter Armbruster, or Bret Naggs, on the other hand, that refer, reflect or relate to the Subject Matter.

(ECF 132-10.) "Subject Matter" is defined in the Subpoenas to include the facts and allegations related to the charges in this case, including the facts and circumstances of Roadrunner's restated financial results, and Roadrunner's internal investigation of the same. (*Id.*) The Law Firms did not communicate with Defendants about the subpoenas, object to their scope or process, or otherwise meet and confer with Defendants before filing their joint Motion to Quash on the last date for compliance. (ECF 127.) Following more than 57 pages of briefing regarding the Law Firm's compliance obligations, the Magistrate Judge recommended that the Motion to Quash be granted

---

coverage for costs related to legal actions as part of the restatement." Form 10-K Annual Report for Roadrunner Transportation Systems, Inc. (submitted June 17, 2020) at page 17, *available at* https://www.sec.gov/Archives/edgar/data/1440024/000144002420000011/rrts-20191231x10k.htm.

in a terse six-page Order based on the purported "overbreadth" of the Subpoena requests. (ECF 167.) These timely objections follow.

## III. ARGUMENT

Federal Rule of Criminal Procedure 59(a) governs the district court's review of a Magistrate Judge's ruling on a non-dispositive matter, such as the Law Firms' motion to quash. When reviewing the Magistrate Judge's Order, the Court is obliged to analyze any timely objections and must "modify or set aside any part of the Order that is contrary to law or clearly erroneous." FED. R. CRIM. P. 59(a). Discovery matters in criminal cases are committed to the sound discretion of the trial court. *U.S. v. Bastanipour*, 697 F.2d 170, 175 (7th Cir. 1982).

### A. The Subpoenas are not overly broad and seek only limited documents and information exchanged between the Law Firms and the government or the Defendants.

The Order recommended that the Subpoenas be quashed for the *sole* reason that they are overbroad. In support, the Order found that the Subpoenas "read like civil discovery requests" and cited as an example of their breadth that the requests "related to the SEC's civil lawsuit against the [D]efendants." (ECF 167 at 5-6.) The Order erroneously misunderstands, or does not consider, the factual record and the narrow set of documents that are responsive to the Subpoenas.[4]

---

[4] The Order purported to adopt and apply the test articulated in *U.S. v. Nixon*, 418 U.S. 683 (1974) to the Subpoenas at issue. (ECF 167 at 6.) In *Nixon*, the Supreme Court held, *in the context of a subpoena to the government*, that the subpoenaing party is required to establish that the requested documents are relevant, admissible, and adequately specific. However, the Supreme Court limited the application of that test to subpoenas issued to the government and the Court expressly declined to hold that its articulated standard applied to nonparty subpoenas, such as the Subpoenas to the Law Firms in this matter. *Nixon*, 418 U.S. at 699 n.12. Although the Order references *Nixon*, the Order does not actually apply any analysis under *Nixon* and instead holds only that the Subpoenas are overbroad. Defendants assert that *Nixon* should not apply to third party subpoenas, which should be enforced unless compliance would be unreasonable or oppressive. (ECF 132 at 10-11.) If this Court rejects the Order, it should analyze the enforceability of the Subpoenas under the applicable reasonable/oppressive test for the reasons set forth in Defendants' prior briefing. (ECF

7

VP/#40003120

Request 1 seeks the Law Firms' communications with the government related to the charges in this case, the materially identical allegations in the parallel civil lawsuit concerning the same subject matter, Roadrunner's restated financial statements, or Roadrunner's internal investigation. (ECF 132-10.) As discussed, above, Request 1 contemplates a narrow time period and a small group of custodians for each of the Law Firms. Further, the universe of government attorneys with whom the Law Firms communicated is as few as nine. Thus, compliance with Request 1 would require each Law Firm to perform only a straightforward search for documents and communications during a relatively short time period for a handful of custodians.

Although these megafirms have so far avoided making any representation about the frequency with which they provided information to the government (and may wish not to disclose such details), the universe of communications between counsel and government adversaries investigating counsel's client and its employees is likely quite small. This is not a request, for example, that is at all akin to a "civil discovery request" that may seek every communication between entities involved in a business transaction or relationship spanning many years. To the contrary, it is perfectly reasonable to presume that the Law Firms collectively communicated with the government only dozens of times during the relevant period. Defendants can only guess about this because the Law Firms have never made any effort whatsoever to substantiate their blanket objections of burden or overbreadth.

Similarly, Request 2 seeks documents reflecting information that may have been conveyed by the Law Firms to the government orally, such as PowerPoint presentations that were shown to the government but not provided in hard copy, or scripts of talking points related to read-outs on

---

132 at 10-12; *see also U.S. v. Smith*, 2020 WL 4934990, at *2-4 (N.D. Ill. Aug. 23, 2020) (rejecting the admissibility prong of the *Nixon* test as applied to a Rule 17 subpoena.)

8

VP/#40003120
Case 2:18-cr-00130-LA   Filed 09/14/20   Page 11 of 19   Document 173

the relevant topics. (ECF 132-10.) The scope of potentially responsive documents to Request 2 is perhaps even narrower than Request 1, as it is intended to be limited to documents referenced as the basis of information provided during teleconferences or in-person meetings between the government and the Law Firms.[5] Based on the information the Law Firms have produced to date, there were approximately 29 calls or meetings between WilmerHale and the government and 12 calls or meetings between Greenberg Traurig and the government. A request for documents reflecting the information conveyed at those meetings is not "overly broad."

Requests 3 and 4 are even more targeted, and the Law Firms have already represented that they have limited or no documents responsive to each. Request 3 seeks communications relating to either Law Firm's individual representation of any of the Defendants. (ECF 132-10.) WilmerHale previously represented that it "never communicated with any Defendant about individual representation issues," never represented any Defendant, and possesses no documents responsive to Request 3. (ECF 127 at 12, ECF 134 at 12.) Similarly, Greenberg Traurig has represented that it never represented Naggs or Armbruster. (ECF 134 at 12.) Thus, the universe of documents responsive to Request 3 is limited to Greenberg Traurig's communications concerning its representation of Wogsland, which lasted only a few months. This request is not burdensome to Greenberg Traurig in any meaningful way and, as discussed below, its compliance is required by the Order. (*See infra* Section III(C).) Likewise, Request 4 seeks communications directly between the Law Firms and the individual defendants about the relevant subject matter. Although the Law Firms' objection to this request was based on vague privilege grounds, which did not identify specifically what responsive documents are privileged, the Order did not analyze or decide

---

[5] Defendants have repeatedly made clear that the Subpoenas only seek the information in such documents that was communicated to the government, and do not seek the Law Firms' work product. (*See*, *e.g.*, ECF 132 at 24-27.)

9
VP/#40003120
Case 2:18-cr-00130-LA   Filed 09/14/20   Page 12 of 19   Document 173

the privilege issue. (*See* ECF 127 at 12-13.) There is no genuine dispute that Request 4 does not seek an "overly broad" set of documents and the Order should be rejected on that basis alone.

Moreover, the authority cited by the Order does not support its recommendation. The Order relied heavily on *U.S. v. Wingers*, 2008 U.S. Dist. LEXIS 35951 (E.D. Wisc. Apr. 10, 2008), to find that Rule 17 subpoenas are "not intended to serve as discovery device[s]." (ECF 167 at 5.) But *Wingers* involved entirely different facts and resolved a legal question that is not at issue in this case. *Wingers* dealt with a motion for early return of Rule 17 subpoenas, which the magistrate judge recommended be denied. This Court agreed because the defendant did not "specify the witnesses he wishe[d] to subpoena or the documents he [sought] to obtain." *Id.* at *2. In fact, the Court stated that "if defendant can provide specifics as to what he wants and why, [the Court would] be willing to reconsider" authorizing early return. *Id.* In this case, this Court already (twice) granted Defendants' motion for early return of subpoenas (ECF 79, 123) and the Subpoenas plainly state with specificity the parties being subpoenaed and the documents requested.

The Order also erroneously relied on *U.S. v. Jungen*, 2014 WL 4924654 (E.D. Wis. Sept. 30, 2014), which quashed a Rule 17 subpoena because the defendants "fail[ed] to provide any indication as to what they expect to find in these files." *Id.* at *4. That holding is in stark contrast to this case, where the Subpoenas were borne in part from the substantial record of evidence of communications between the government and the Law Firms. (*See* ECF 113-1.) Defendants have demonstrated that they "expect to find" documents and information related to the Law Firm's interviews of numerous employee witnesses and other findings from Roadrunner's internal investigation that were likely communicated to the government in the form of PowerPoint presentations and oral read-outs, for example. That information almost certainly contains exculpatory evidence and potential impeachment material for use in cross-examining government

10

witnesses at trial, and is also highly relevant to the constitutional violations under *Garrity* and *Kastigar* raised in Defendants' pending Motion to Dismissed (discussed in greater detail below).

Additionally, one of the subpoenaed parties in *Jungen* demonstrated that the subpoena would result in the review and production of *at least* 40,000 files spanning more than 600 folders, plus responsive emails. *Id.* Here, the Law Firms have not even tried to substantiate their boilerplate objections because no such similar burden exists in this case. The Subpoenas seek only documents and information shared with the government related to this matter, which in all likelihood are already segregated or easily retrievable based on the limited number of custodians and potential government recipients.

In sum, in finding that the Subpoenas are overly broad and unenforceable, the Order focused solely on the phrasing of the requests and performed no analysis of the potentially responsive documents. Simply because a request seeks "all documents and communications" about a subject does not necessarily mean that it encompasses an enormous number of documents. The number of documents and communications related to communications between adversarial parties in the context of a government investigation are sure to be few; thus, the Subpoenas are not overbroad.

### B. The subpoenaed information is highly relevant and material to the defense.

The Order did not decide the Law Firm's relevancy objections, other than to question (without deciding) whether documents related to the parallel SEC civil case against Defendants are relevant to this case. (ECF 167 at 6.) Rather than squarely address the plainly overlapping nature of each case, the order suggested that Defendants should seek the requested information in the civil case instead of by Rule 17 subpoena here. The SEC case has been stayed in its entirety since May 28, 2019, so pursuing third-party discovery from the Law Firms in that matter would be cumbersome and inefficient, if not outright impossible at this time. Regardless, the SEC matter

11

VP/#40003120
Case 2:18-cr-00130-LA   Filed 09/14/20   Page 14 of 19   Document 173

involves the same accounting issues at Roadrunner that gave rise to the indictment in this criminal case and the subpoenaed documents are likely responsive to both actions.[6] Indeed, both the SEC and DOJ were present at many of the meetings during which the Law Firms conveyed the results of their investigations. (ECF 113-2, 113-3.) In any event, the pendency of a civil case is not a reason to deny a criminal defendant material evidence in a parallel criminal case.

Although the Order did not make any other relevancy findings, to preserve the issue, Defendants have sufficiently demonstrated that Roadrunner's and its outside counsel's factual findings related to the conduct at issue in this case will go to the heart of the defense and will likely contain exculpatory evidence and impeachment material. For instance, Greenberg Traurig told Roadrunner's audit committee and outside auditors (and presumably the government, although neither will confirm) that its investigation found no evidence of fraud related to the accounting issues—for which Defendants have now been charged with fraud. (ECF 87-5.) The details of that finding, in addition to other information that the Law Firms conveyed to the government, almost certainly contain exculpatory information that will undermine the government's case. Further, factual information obtained from by Roadrunner's counsel and provided to the government will likely provide a wealth of impeachment material that may be used for cross examining government witnesses at trial.

In addition to the Subpoena's relevance to Defendants' core defenses, the documents responsive to the Subpoenas are directly relevant to the constitutional issues raised in Defendants' pretrial motions. Defendants have developed evidence that shows the government obtained

---

[6] The Order seems to suggest that the scope of the allegations in the SEC case is broader than the scope of this case. Not so. The government has chosen to indict Defendants based on allegations that are incredibly broad, at times unconstitutionally vague, and arguably encompassing of the entire SEC case and then some. Those issues are currently the subject of Defendants' pending Motion for Bill of Particulars. (ECF 142.)

compelled statements from Defendants in violation of their Fifth Amendment rights, and then used those statements to bring charges against Defendants. (ECF 87, 113.) Issues raised in a pretrial motion are considered "relevant" and are properly the subject of Rule 17 Subpoenas. *See U.S. v. Soliman*, 2009 U.S. Dist. LEXIS 45194, at *11 (W.D.N.Y. 2009) (holding that a subpoena request was reasonable where the defendant demonstrated "the connection between his requests and his defense (his argued defenses in his pending motion to dismiss as well as his general defenses)") (emphasis added).[7]

In short, the Order finds no support in the law or the factual record of this case. The circumstances leading to the Indictment in this matter are highly unusual and require a more detailed level of scrutiny than the Order provided. Defendants have thus far been denied the ability to substantiate their core defenses through discovery requests to the government *and* Rule 17 subpoenas to the Law Firms, while both the government and the Law Firms have been successful in avoiding their obligations by pointing the finger at each other. The Order should be rejected and Defendants should be provided the evidence they need and to which they are entitled to defend themselves.

### C. Greenberg Traurig should be Ordered to turn over Wogsland's client file.

The Order separately required that, "to the extent the Greenberg law firm represented Wogsland in his individual capacity, Wogsland is entitled to receive his client file." (ECF 167 at 6.) The Order further required that, "to the extent the law firm contends no client file exists, it

---

[7] Defendants advised the Court in both motions seeking early return of Rule 17 subpoenas that the subpoenas would seek evidence relevant to Defendants' pretrial motions. (ECF 77, 122.) Most recently, Defendants specifically stated that the subpoenas would seek "production of documents and information relevant to Defendants' pretrial motions and preparation of the defense." (ECF 122.) The Court expressed no concern and raised no issue about such subpoenas being "unreasonable" or "oppressive" for seeking information relevant to pretrial motion issues. (ECF 79, 123.)

<mark>13</mark>

should explicitly say so." (*Id.*) Greenberg Traurig has previously represented that "*Roadrunner produced to Wogsland on September 23, 2019 the case file for his own representation by Greenberg Traurig.*" (ECF 134 at 12, emphasis added.) Why Roadrunner would be in possession of *Greenberg Traurig's* client file, Greenberg Traurig has never explained. In any event, that "file" consists of 27 emails between Wogsland and Greenberg Traurig (presumably pulled by Roadrunner from its own email server) that related to scheduling and the postmortem of Wogsland's grand jury testimony, the grand jury subpoena for his testimony, and *Wogsland's* notes related to the grand jury experience. It is simply inconceivable that Roadrunner's production constitutes Greenberg Traurig's client file, insofar as it contains no internal Greenberg Traurig communications, no Greenberg Traurig work product related to Wogsland's testimony, and no communications between Greenberg Traurig and the government related to Wogsland, to name but a few examples. Greenberg Traurig has not communicated with counsel for Wogsland or provided its client file for Wogsland since the Order issued. Wogsland requests that Greenberg Traurig be required to comply with the Order to produce Wogsland's client file to him or, alternatively, to affirm explicitly in writing that no client file exists.

## IV. CONCLUSION

For all of the foregoing reasons, and those set forth in Defendants' opposition to the Motion to Quash, the Motion to Quash should be denied and the Law Firms should be Ordered to comply with the Subpoenas as written based on the record developed in this case.

Respectfully submitted,

                                        MARK WOGSLAND

                                        By:  /s/ Ryan S. Hedges
                                             One of His Attorneys

Ryan S. Hedges – IL Bar #6284872
Junaid A. Zubairi – IL Bar # 6278783
Jonathon P. Reinisch – IL Bar # 6317528
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
T: +1 312 609 7500
rhedges@vedderprice.com
jzubairi@vedderprice.com
jreinisch@vedderprice.com

Dated: September 14, 2020

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served on all attorneys of record in the above-captioned case via the CM/ECF electronic filing system on September 14, 2020.

/s/ Ryan S. Hedges
Ryan S. Hedges