# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> PETER ARMBRUSTER, ) <br> ) <br> Defendant. ) | Case No. 18-CR-130 |

### ORDER ON DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL

MATTHEW F. KENNELLY, District Judge:

After an eleven-day trial, a jury convicted Peter Armbruster on Counts 5, 6, 7, and 13 of the superseding indictment in this case, while acquitting him on a number of other counts. Armbruster has moved for entry of a judgment of acquittal.

During the relevant time, Armbruster was the chief financial officer of Roadrunner Transportation Systems, Inc. (Roadrunner), a publicly traded trucking and logistics company. It owned and operated a number of operating subsidiaries, including Roadrunner Intermodal Services, Inc. (Intermodal). The accounting firm Deloitte & Touche acted as the outside auditor of Roadrunner's financial statements. The charges in question involved, in broad terms, allegations that (for the most part in 2016) Armbruster caused the falsification of the books and records of Roadrunner and its subsidiaries, fraudulently misled Deloitte in connection with its audit of the company's financial statements, and defrauded the company's shareholders.

Armbruster has moved for entry of a judgment of acquittal on each of the charges on which the jury convicted him. In considering the motion, the Court views the

evidence in the light most favorable to the government and asks whether a rational jury could have found the essential elements of the charges to have been proven beyond a reasonable doubt. *See, e.g., United States v. Garcia*, 919 F.3d 489, 496 (7th Cir. 2019).

1.      **Counts 6 and 7 – 15 U.S.C. §§ 78m(b)(2), 78m(b)(5), and 78ff(a)**

To convict on Count 6 and Count 7, the jury had to find that Armbruster knowingly and willfully falsified or caused someone else to falsity the books, records, or accounts of Roadrunner in the way alleged in the particular count. The two counts concerned, respectively, an account receivable relating to IKEA in the approximate amount of $400,000 carried on Intermodal's books (Count 6), and approximately $600,000 carried on Intermodal's books for prepaid taxes and licenses (Count 7). The evidence showed that both of these balances should have been written off as early as 2014 but were still on the books as of 2016, and that Armbruster knew, approved, authorized, and directed that the balances remain on the company's books.

Armbruster was copied on an analysis in October 2014 that showed the impropriety of carrying the balances in these accounts, and the jury could infer his knowledge from that alone. An analysis by a Roadrunner accountant, Connor Kursel, which the evidence showed was provided to Armbruster, further tended to establish his knowledge of the improper accounting for the uncollectible IKEA account receivable, which under generally accepted accounting principles (GAAP) should have been written off, and the prepaid taxes account, which under GAAP was overstated.

Beyond this, the government introduced evidence that would permit a reasonable jury to find that these accounting misstatements were discussed with and by Armbruster

and that he was aware that the accounts had been and were being treated improperly from an accounting standpoint, in a way that made Roadrunner's finances look materially better than they actually were. This included testimony from Stephen Voorhees, the controller of Intermodal; an analysis by Chris Lacey, Voorhees's successor; and documents reflecting Lacey's discussion of the issues with Armbruster. This evidence also included testimony by Heather Hipke, Roadrunner's vice president of finance, regarding a statement by co-defendant Mark Wogsland to the effect that "Peter [Armbruster] knows about these items." (This testimony came in without objection by Armbruster and was admissible under Fed. R. Evid. 801(d)(2)(E) in any event.)

The evidence also permitted a reasonable jury to find that rather than dealing with these balances appropriately from an accounting standpoint—i.e. by writing them off—Armbruster approved a plan to write the accounts down gradually over time, to avoid a potentially significant immediate adverse effect on Roadrunner's financial statements. (This evidence included, among other things, e-mails that Armbruster forwarded to other executives in November 2016 and other e-mails from 2015.) There was also evidence, including testimony from Hipke and Kursel, as well as documentary evidence, reflecting that Armbruster maintained control over when and how these write-downs occurred. This treatment of the accounts rendered the financial statements materially misleading.

In addition, there was ample evidence that permitted a reasonable jury to find that Armbruster, who had significant experience in accounting and served as the company's chief financial officer, *knew* that the accounting treatment that he approved and supervised was improper and led to a fraudulent misstatement of the company's

3

books and records.

This and other evidence, taken in the light most favorable to the government (as required on a Rule 29 motion), was sufficient to establish Armbruster's knowing and willful falsification of Roadrunner's books and records as charged in Counts 6 and 7. Armbruster's contention that a number of the communications cited by the Court and the government made reference to these balances as *potential* problems and thus did not show their falsity does not carry the day. The government established by a wealth of evidence that the appropriate accounting treatment would have been to write these accounts off immediately (well before the fall of 2016, and certainly as of that date), not gradually over time as Armbruster approved—a treatment that had no relationship with the real status of the accounts and that did not comport with appropriate accounting standards.

Finally, the evidence was sufficient to establish Armbruster's willfulness, that is, his knowledge that his actions were unlawful. Circumstantial evidence is, of course, sufficient to establish willfulness, just as it is sufficient on any other issue. The evidence here included Armbruster's certification of Roadrunner's third quarter 2016 Q3 SEC Form 10-Q, which made specific reference to legal requirements under the Securities Exchange Act.

For these reasons, Armbruster is not entitled to a judgment of acquittal on Count 6 or Count 7.

**2.     Count 5 - 15 U.S.C. § 78ff(a) and 17 C.F.R. § 240.13b2-2(b)**

To convict Armbruster on Count 5, a charge under 15 U.S.C. § 78ff(a) and 17 C.F.R. § 240.13b2-2(b), the jury had to find that he directly or indirectly misled or

4

Case 2:18-cr-00130-MFK   Filed 11/08/21   Page 4 of 8   Document 325

fraudulently influenced Deloitte while it was auditing financial statements that Roadrunner was required to file with the SEC, knowing that if successful his actions would make the financial statements materially misleading, and that he acted knowingly and willfully. The charge involved a management representation letter attesting that the financial statements were accurate, which Armbruster signed and caused to be transmitted to Deloitte in mid-November 2016.

The evidence on Count 5 significantly overlapped with that relating to Counts 6 and 7. In addition to the points discussed above with respect to Counts 6 and 7, the Court notes the following. The government's evidence reflected that in early November 2016, Armbruster attended a meeting (referred to during the trial as the "whiteboard" meeting) at which problems with Roadrunner's accounting were listed on a whiteboard and discussed. A rational jury could find that by virtue of this meeting, the other evidence discussed earlier with respect to Counts 6 and 7, and additional evidence, Armbruster knew that the company's books and records, in material respects, were not fairly and accurately presented in accordance with generally accepted accounting principles. This was supported by, among other evidence, communications between Bret Naggs and Patrick McKay, between Connor Kursel and Armbruster, and the testimony of Kursel, Hipke, and Voorhees.

Just a few days after the whiteboard meeting, Armbruster signed a management representation letter advising Deloitte that it had been provided all relevant information and that the financial statements were prepared and presented in conformity with generally accepted accounting principles. The evidence, taken in the light most favorable to the government, reflected that Armbruster knew the management

representation letter was false when he signed it.  Specifically, the evidence permitted a rational jury to find that Armbruster knew at that time that Roadrunner's financial statements were materially misleading in that they included millions of dollars in unsupported balances that should have been written off as early as 2014—including, though not limited to, the balances involved in Counts 6 and 7.  Instead of having these balances written off as they should have been under generally accepted accounting principles, Armbruster was aware of and approved gradually reducing them over time, with the goal of reducing the impact to the company's bottom line and without regard to appropriate accounting treatment.  He nonetheless represented to Deloitte that the financial statements fairly presented the company's financial position.

The evidence, as discussed earlier, also supported a finding that Armbruster acted willfully.  For these reasons, Armbruster is not entitled to a judgment of acquittal on Count 5.

### 3.    Count 13 – 18 U.S.C. § 1348

To sustain the charge of securities fraud in Count 13, the government was required to establish that Armbruster knowingly carried out a scheme to defraud Roadrunner's shareholders, with the intent to deceive and cheat them.  As alleged in the superseding indictment, this particular count involved the SEC Form 10-Q for the third quarter of 2016, and more specifically, the financial statements accompanying the 10-Q.

The evidence supporting this Count was largely overlapping with that on Counts 5, 6, and 7.  As discussed above with respect to those Counts, the evidence was sufficient to permit a rational jury to find that Armbruster knew Roadrunner's financial statements were misleading but nonetheless certified their accuracy by signing them

and authorizing the filing of the 10-Q.

In addition, the evidence was sufficient to permit a reasonable jury to find that the financial statements were *materially* misleading. The accounting misstatements that Armbruster approved and caused inflated the company's income in a misleading way. As the government contends, the evidence permitted a reasonable jury to find that there were millions of dollars of unsupported balances on the books that required correction to make the financial statements accurate and not misleading. Armbruster attempted to conceal this by approving the gradual write-down plan and by approving or disapproving particular accounting entries related to the writing down of the particular accounts in question.

Given Armbruster's position and duties at Roadrunner and his background and experience, the jury reasonably could infer that the misstatements were intended to deceive Roadrunner shareholders and potential investors—who were among the intended audience for the 10-Q. Finally, the evidence also permitted the jury to find that Armbruster made a false exculpatory statement after the fact—in a January 2017 SEC filing—that "accounting discrepancies" had come to management's (including his) attention "in November 2016." The jury reasonably could find this was untrue, in that Armbruster knew about the misstatements long before that and approved them. Consequently, the jury reasonably could find that Armbruster's January 2017 statement was a false exculpatory statement indicative of consciousness of guilt—frankly, with respect to each of the charges, not just this one.

## Conclusion

For the reasons stated above, the Court denies defendant Peter Armbruster's

7

Case 2:18-cr-00130-MFK   Filed 11/08/21   Page 7 of 8   Document 325

motion for judgment of acquittal [dkt. no. 319].

Date: November 8, 2021

_____
MATTHEW F. KENNELLY
United States District Judge