UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PETER ARMBRUSTER, )<br>)<br>Defendant. )<br>) | Case No. 18-CR-130-MFK |

## UNITED STATES' SECOND RESTITUTION SUPPLEMENT

Plaintiff United States of America, by and through counsel of record, hereby respectfully submits a second update to its Restitution Memorandum (Dkt. 348) in advance of this Court's hearing on setting the amount of restitution owed by defendant Peter Armbruster. The restitution hearing is currently set for March 16, 2022.

### I. Revised Calculation of Restitution

Following further evaluation of the data available to the government, together with additional communications with victims, the government submits the following revised calculation of the restitution amount owed to the victims identified in its initial filing.

The government notes that it continues to use the same methodology for calculating restitution as used in the government's initial filing. However, the government identified two instances of possible overlap between amounts attributed to different victims, and so it has revised the figures below to remove potential double-counting of restitution amounts between identified victims. The government has also revised the restitution amount associated with Institution 2 as noted below.

1

| Victim[1] | Shares Purchased[2] | Loss (# shares x $3.45) |
|---|---|---|
| R.A. | 5000 | $17,250 |
| S.B. | 7,265 | $25,064.25 |
| L.B. | 9,000 | $31,050 |
| K.B. | 3,664 | $12,640.80 |
| H.B. | 19,250 | $66,412.50 |
| M.E. | 11,000 | $17,416.28[3] |
|  | 1,000 | $3,450 |
|  |  | Total: $20,866.28 |
| L.I. | 3,400 | $473.14[4] |
| J.K. | 6100 | $21,045 |
| N.T. | 4,000 | $13,800 |

---

[1] The government previously identified these victims in its first supplement, filed under seal as docket number (Dkt. 350).

[2] The following shares were purchased between the time period of November 6, 2014, through January 30, 2017. For individual investors, where stock trade information supplied by the investors indicated that they sold shares purchased in this period *prior* to January 30, 2017, those shares were subtracted from the count appearing in this chart. As discussed further below in Note NP, the government utilized a "net purchase" method to determine the number of shares for several institutional investors, and—in one case—did not receive sufficient information from an institutional investor to count the number of relevant shares.

[3] M.E. account statements reflected an actual loss of $17,416.28, which is lower than the amount calculated by multiplying the price inflation of $3.45 by the number of shares because of the price at which M.E. was able to sell shares.

[4] L.I. account statements reflected an actual loss of $473.14, which is lower than the amount calculated by multiplying the price inflation of $3.45 by the number of shares because of the price at which L.I. was able to sell shares.

| | | |
|---|---|---|
| T.T. | 6,900 | $23,805 |
| G.W. | 10,000 | $34,500 |
| Institution 1 | 2000 | $6,900 |
| Institution 2 | 3,000 | $4,874.40[5] |
| Institution 3 | 43,700 | $150,765 |
| Institution 4 | 4,943,332[NP] | $17,054,495.40 |
| Institution 5 | 110,554[NP] | $381,411.30 |
| Institution 6 | 79,485[NP] | $274,223.25 |
| Institution 7 | 376,823[NP] | $1,300,039.35 |
| Institution 8 | 144,394[NP] | $498,159.30 |
| Institution 9 – Account A | Unknown[6] | $55,219 |
| Institution 9 – Account B | Unknown | $82.25 |

---

[5] Institution 2 account statements reflected an actual loss of $4,874.40, which is lower than the amount calculated by multiplying the price inflation of $3.45 by the number of shares because of the price at which Institution 2 was able to sell its shares. The number in the chart above has been revised to reflect this lower number.

[NP] These share counts were obtained by utilizing trading data from each institution to determine the institution's net purchases in Roadrunner shares during the November 6, 2014, through January 30, 2017, time period. Net purchases would include any shares purchased during this time period, minus any shares sold during this time period. All but one institution for which this method was used provided trading data by account or portfolio, and in those cases the net purchases were calculated specific to each account or portfolio. Institution 8 did not provide trading data by account, so the net purchases were assessed across the firm as a whole.

[6] The figures presented here for Institution 9 were obtained from a victim impact submission that utilized a method of determining the number of "net shares" purchased by each of its investor accounts, multiplied by a different loss figure of $3.29. Because the submission by Institution 9 did not specify the number of net shares purchased, the government has not included this in this filing and includes the loss number specified by the institution for each account (Accounts A through N) rather than a number obtained by using the government's method of calculation.

3

| Institution 9 – Account C | Unknown | $11,011.63 |
| Institution 9 – Account D | Unknown | $7,919.03 |
| Institution 9 – Account E | Unknown | $24,786.86 |
| Institution 9 – Account F | Unknown | $0.00[7] |
| Institution 9 – Account G | Unknown | $0.00 |
| Institution 9 – Account H | Unknown | $328,651.26 |
| Institution 9 – Account I | Unknown | $169,362.62 |
| Institution 9 – Account J | Unknown | $26,928.65 |
| Institution 9 – Account K | Unknown | $16,111.13 |
| Institution 9 – Account L | Unknown | $18,710.23 |
| Institution 9 – Account M | Unknown | $536,444.37 |
| Institution 9 – Account N | Unknown | $474,911.50 |

**TOTAL RESTITUTION:**                                    $21,607,913.86

## II.  Conclusion

The government submits that the appropriate amount of restitution to order in this case is $21,607,913.86. It reflects the amount of loss that each of the identified investors incurred by purchasing Roadrunner shares at a price that was fraudulently inflated by $3.45 per share (as a

---

[7] After discussions with Institution 9, it was decided to place a zero value on Accounts F and G to avoid the risk of overlapping loss amounts between those accounts and accounts at another institution.

result of the defendant's fraudulent conduct), and then holding those shares through the date that Roadrunner revealed the company's balance sheet problems to the market.

The defendant suggests the $3.45-inflation value should be reduced because, he claims, "[th]e only conduct related to *any* of the counts of conviction during this timeframe is that pertaining to Counts 6 and 7[,]" which amounted to roughly $1 million. Dkt. 351 at 2. This is a flawed legal analysis that ignores the evidence. Contrary to the defendant's implication, the government is not seeking a restitution order based on acquitted conduct; rather, the scheme in Count Thirteen—which is the only basis for the restitution order—as a whole encompassed a broad range of fraudulent accounting activity. C.L. and H.H. testified about documents provided to the defendant that identified multiple unsupported assets and there is no reason to assume, or acquitted counts from which to infer, the jury ignored this evidence when they found the defendant guilty of securities fraud and lying to the auditors.

Moreover, multiple investors testified they would have made different investment decisions if they had known, without limitation as to the amount, that management could not be trusted (Trial Test. of S.B. at 2137:4-7 Q: "Would you be willing to invest in a company if management wasn't trustworthy?" A: "No."; Trial Test. of M.E. at 1282:45-25, 1283:1-2 Q: "Would it be capable of influencing your – your investment decisions if you knew that the management of a company was hiding accounting information from an auditor?" A: "It would definitely impact my decision."). In other words, Count Thirteen extends beyond these two balance sheet accounts to the very trustworthiness of management, and the evidence indicated that the stock price reflected the market's reaction to the revelation of the scheme. For the securities fraud scheme, the investors should be made whole because, as the evidence at trial indicated, the integrity of management mattered without quantitative limitation.

5

Respectfully submitted,

JOSEPH S. BEEMSTERBOER

Acting Chief, Fraud Section
Criminal Division
U.S. DEPARTMENT OF JUSTICE

By: /s/
Emily Scruggs
Kyle Hankey
Justin Weitz
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue NW
Washington, DC 20530

Date: March 9, 2022

**CERTIFICATE OF SERVICE**

I, Emily Scruggs, certify that the foregoing has been served on all attorneys of record in the above-captioned case, either via the CM/ECF electronic filing system or via email.